24-07003MB (JR)

## AFFIDAVIT

I, Shawn Pack, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) in Nogales, Arizona. As such, I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent with HSI since September 2018. Prior to joining HSI, I was employed as a Police Officer of the Sahuarita Police Department, Arizona, since 2012.

2. As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, and Title 21 of the United States Code. Included in my responsibilities is the investigation of illicit contraband-smuggling, including narcotics-smuggling, across the United States border. In preparing to become a Special Agent, I attended the Basic Criminal Investigator and the HSI Special Agent training programs at the Federal Law Enforcement Training Center in Glynco, Georgia.

3. Through my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that drug-traffickers commonly use cellular telephones to communicate with their narcotics associates and to facilitate the commission of their narcotics offenses. These cellular telephones usually contain electronically stored data on or within the cellular telephones, including, but not limited to, contact names and numbers of narcotics associates, call details including call history, electronic mail (email) messages, text messages and/or text message history, and digital images of the drug-trafficking associates and/or activity, all of which can be used to identify and locate narcotics-trafficking associates, to identify methods of operation of the

drug-trafficking organizations (DTOs), and to corroborate other evidence obtained during the course of the current investigation.

4.      By virtue of my employment as a Special Agent, I have performed various tasks, which include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs; (b) interviewing witnesses, cooperating sources ("CSs") and sources of information ("SOIs") relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (to include the laundering of drug-trafficking proceeds); and (c) functioning as a case agent, entailing the supervision of specific investigations involving the trafficking of drugs and the laundering of drug-trafficking proceeds.

5.      In the course of conducting drug investigations, I have personally interviewed informants and persons involved in the distribution of illegal drugs. I have consulted with other experienced investigators concerning the practices of drug-traffickers and the best methods of investigating them. In preparing this Affidavit, I have conferred with other Special Agents and law enforcement officers involved in this investigation. Furthermore, I have personal knowledge of the following facts or have learned them from the individuals mentioned herein.

6.      Your Affiant submits this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the contents of electronic communication devices capable of accessing the internet (the Target Smartphone, defined below), and the extraction from the Target Smartphone of electronically stored information further described in Attachment B hereto. Because this affidavit is being submitted for the limited purpose of securing a warrant to search the Target Smartphone, your Affiant has set forth only the facts which your Affiant believes are necessary to establish probable cause to search the Target Smartphone.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The electronic communication device to be examined are described as:

    a. one (1) black colored Apple iPhone cellular phone, unknown IMEI with a clear case with silver centerpiece – hereinafter, Target Device # 1, or TD-1, in the possession of Guillermo GONZALEZ.

The particular Target Device to be searched pursuant to the attached Application is further described in Attachment A hereto.

## BACKGROUND ON SMARTPHONES

8. Based upon my knowledge, training, and experience, as well as information related to your Affiant by law enforcement officers and others experienced in the forensic examination of electronic communication devices, your Affiant knows that certain types of cellular telephones referred to as "smartphones" (such as the Target Smartphones) generally offer more advanced computing ability and internet connectivity than standard cellular telephones. Provided that internet access has been purchased through an electronic communication service provider for a particular smartphone, a smartphone is capable of running complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

9. As described in Attachment B hereto, this affidavit seeks permission to locate not only data files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes what individual(s) used the Target Smartphone as well as the purpose of its use. Additionally, this affidavit seeks information about the possible location of other evidence.

10. As described in Attachment B hereto, this affidavit also seeks permission to search and seize certain electronic records that might be stored

within the Target Smartphone. Some of these electronic records might take the form of files, documents, or other data that are user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

11. Although some of the records requested in this affidavit might be found in the form of user-generated documents (such as electronic format documents and picture and movie files), electronic communication devices (such as the Target Smartphones) can contain other forms of electronic evidence that are not user-generated. In particular, an electronic communication device may contain records of how it has been used and/or the person(s) who utilized the electronic communication device. Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers, and other persons involved in the forensic examination of electronic communication devices, I know that:

    a. Data on electronic communication devices not currently associated with any file can provide evidence of a file that was once on the electronic communication device, but has since been deleted or edited, or of a deleted portion of a file;

    b. Virtual memory paging systems can leave traces of information on an electronic communication device that can be used to determine what tasks and processes were recently in use;

    c. Web browsers, e-mail programs, social media platforms, and chat programs store configuration information on the electronic communication devices that can reveal information such as online nicknames and passwords;

    d. Operating systems can record additional information, such as the attachment of peripheral electronic devices, and the number of occasions on which the peripheral electronic devices were accessed;

e. Computer file systems can record information about the dates that files were created and the sequence in which they were created. This information may be evidence of a crime and/or indicate the existence and/or location of evidence in other locations on the electronic communication device;

d. When an electronic communication device has more than one user, files can contain information indicating the dates and times that the files were created as well as the sequence in which the files were created, and whether a particular user accessed other information close in time to the file creation dates, times, and sequences;

e. The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying an electronic communication device user, and contextual evidence excluding an electronic communication device user. All of these types of evidence may indicate ownership, knowledge, and intent to commit a given offense; and

f. The foregoing type of evidence is not "data" that can be segregated, that is, this type of information cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators. Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how electronic communication devices operate and how electronic communication devices are used. Therefore, contextual information necessary to understand the evidence described in Attachment B hereto also falls within the scope of the warrant.

## CHARACTERISTICS OF INDIVIDUALS INVOLVED IN DRUG-TRAFFICKING ORGANIZATIONS

12. Based upon my knowledge, experience, and training in DTO investigations, as well as the training and experience of other law enforcement officers with whom your Affiant has had discussions, your Affiant knows that there are certain characteristics common amongst individuals involved in DTOs. Individuals involved in drug-trafficking activity tend to:

   a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

   b. Collect data pertaining to other co-conspirators involved in drug-trafficking activity, including drug types and quantities provided, as well as monies owed and/or paid for illegal controlled substances;

   c. Possess and maintain records reflecting bank transactions and/or money transfers;

   d. Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the Target Smartphones). These records are often maintained for several years and are kept close in close proximity to the drug-trafficker, usually at the individual's residence, to enable the drug-trafficker to review the records, which are highly valued;

   e. Correspond with and/or meet with other drug-trafficking associates to share drug-trafficking information and/or materials;

   f. Retain correspondence from other drug-trafficking co-conspirators relating to drug-trafficking activity; and

   g. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the drug-traffickers have been in contact and/or conducted drug-trafficking activity.

## **PROBABLE CAUSE**

13.     Your Affiant submits that there is probable cause to believe that the Target Smartphone requested to be searched may contain evidence identifying: (1) cellular telephone numbers used by drug-trafficking associates; (2) telephone calls conducted with drug-trafficking co-conspirators (to include time, date, and duration of calls); (3) photographs of and/or with drug-trafficking co-conspirators, illegal controlled substances, and/or currency; (4) text and/or voicemail message communications (including time and date) with drug-trafficking associates; (5) electronic mail and social media internet sites accessed by the user of the Target Smartphones; (6) GPS location data; and (7) usernames and/or passwords utilized by the user of the Target Smartphones to access electronic mail and social media internet sites.

14.     Based on your Affiant's training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, your Affiant knows that DTOs utilize cellular telephones (such as the Target Smartphones) to communicate when conducting their illegal activity, utilizing voice, text, and electronic mail (if accessible) functions of the cellular telephone to do so.  These devices are utilized in furtherance of the crime by coordinating the transport and distribution of controlled substances, the collection and movement of currency as well as communicating with members of the DTO about the specific operations of that DTO.  I believe the aforementioned smartphones contain evidence of criminal offenses including, but not limited to, importation of controlled substances, in violation of 21 U.S.C. § 952(a), conspiracy to import controlled substances, in violation of 21 U.S.C. § 960, possession with intent to distribute a controlled substance, in violation 21 U.S.C. § 841, conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846, use of telecommunication facility, in violation of 21 U.S.C. § 843(b), bulk cash smuggling, in violation of 31 U.S.C. § 3538, and money laundering, in violation of 18 U.S.C. § 1956.

15. The following facts are known to me, and by information and belief, in support of this application for a search warrant. I have set forth only sufficient facts which I believe support a finding of probable cause to search this device and not all of the facts known to me regarding this case.

16. On March 19, 2021, HSI Nogales HIDTA agents conducted surveillance at the residence of Wenceslao ELIAS Encinas, located at 7380 South Brackenbury Drive, Tucson, Arizona. Agents observed a male subject, identified as Guillermo GONZALEZ, leave the residence with a package. GONZALEZ drove his vehicle to a UPS store in Tucson, Arizona. Agents seized the package and later executed federal search warrant 21-08446MB, authorized by the Honorable D. Thomas Ferraro, United States Magistrate Judge in the District of Arizona. Upon execution of the search warrant, agents seized approximately 813 grams of fentanyl pills.

17. On March 20, 2021, HSI Nogales HIDTA agents executed federal search warrant 21-08445MB, authorized by the Honorable D. Thomas Ferraro, United States Magistrate Judge in the District of Arizona, at the residence of Wenceslao ELIAS Encinas at 7380 South Brackenbury Drive, Tucson, Arizona, 85746. Upon execution of the warrant, agents made contact with ELIAS, who gave consent for agents to search his cellular phone, which had a phone number of 520-448-8111.

18. Upon reviewing the forensic extraction of the cell phone, agents located several conversations between ELIAS and a Mexican-based drug trafficking coordinator, Jesus Isaias IRIARTE, who utilizes the moniker CABE, in the days before, during and after the package was seized. In these conversations, references are made to deliveries. Based upon my training, experience, and knowledge of this investigation, I know this to be delivering controlled substances. ELIAS also has conversations in the same time frame with GONZALEZ, with conversations that match the same conversations ELIAS had with CABE. ELIAS gave GONZALEZ instructions about picking up from an individual, and on March

20, 2021 (after the package had been taken to UPS by GONZALEZ), ELIAS instructs GONZALEZ to delete pictures and everything he has on his phone. Based upon my training, experience, and knowledge of this investigation, I know this to picking up controlled substances. I also know that controlled substance coordinators instruct couriers to delete photographs and contents on their phones that may implicate both subjects in controlled substance trafficking.

19. On September 28, 2023, federal arrest warrants were issued for GONZALEZ and ELIAS in reference this investigation. On November 28, 2023, GONZALEZ was arrested by the U.S. Marshals Service (USMS) in Tucson, Arizona in reference to the issued warrant.

20. On November 28, GONZALEZ was transported to the Drug Enforcement Administration (DEA) Tucson District Office (TDO) by USMS. Upon arrival, GONZALEZ asked Deputy Marshals to allow him to call his girlfriend and his boss, "Wence." Based upon my training, experience, and knowledge of this investigation, I know "Wence" to be ELIAS, who also owns DW Flooring company.

21. GONZALEZ utilized his personal cellphone, the Target Smartphone, to call his girlfriend and boss in the presence of USMS deputies. When calling his boss, Deputy Marshal Moran observed that the contact was "DW Flooring" with a phone number of 520-448-8111. While processing GONZALEZ, agents observed GONZALEZ's phone appeared to have several text or WhatsApp messages from ELIAS. GONZALEZ's phone was subsequently seized prior to his being booked at the Tucson Federal Courthouse by USMS deputies.

22. The Target Smartphone has been in the custody of HSI since November 28, 2023, and has remained in substantially similar condition as when it was seized. After the calls were made, the phone was placed in airplane mode, then secured in a HSI locked security unit at the DEA TDO, where your Affiant is currently assigned as a member of the Tucson OCDETF Strike Force. Based on your Affiant's training and experience, as well as the training and experience of

other law enforcement agents, I believe the contents of the Target Smartphone will remain on the phone in a substantially similar condition as it was on the day it was seized.

23. Your Affiant is a member of the HSI Tucson OCDETF Strike Force and Special Response Team (SRT). Your Affiant's participation in group and SRT operations was deemed mandatory by your Affiant's management and SRT command staff. Your Affiant had pre-scheduled training and a scheduled SRT operation in California. Additionally, the DEA TDO experienced multiple power issues which caused a delay in access to evidence. The HSI Tucson Seized Property Specialist transitioned to a new position which caused delays in the HSI/CBP seized property management system. Based on your Affiant's training and experience, as well as the training and experience of other law enforcement agents, I believe the contents of the Target Smartphone will remain on the phone in a substantially similar condition as it was on the day it was seized.

24. Based on your Affiant's training and experience, as well as the training and experience of other law enforcement officers involved in the investigation, your Affiant is aware drug couriers and coordinators routinely communicate via cellular telephones to coordinate the transportation and delivery of drugs from Mexico to the United States. Your Affiant is also aware that drug coordinators routinely utilize the Global Positioning System (GPS) function on drug couriers' cellular telephones to monitor the location of courier. This can be done through various applications or features, such as a 'locate/find my smartphone' function or through a shared location.

25. Based upon the above, your Affiant believes that probable cause exists to search the Target Smartphone for the items set forth in Attachment B hereto. Your Affiant believes that the Target Smartphone contains evidence relating to the commission of a criminal offenses including, but not limited to, importation of controlled substances, in violation of 21 U.S.C. § 952(a), conspiracy to import controlled substances, in violation of 21 U.S.C. § 960,

possession with intent to distribute a controlled substance, in violation 21 U.S.C. § 841, conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846, use of telecommunication facility, in violation of 21 U.S.C. § 843(b), bulk cash smuggling, in violation of 31 U.S.C. § 3538, and money laundering, in violation of 18 U.S.C. § 1956.

Respectfully, submitted this _____ day of January, 2024.

SHAWN D PACK
Digitally signed by SHAWN D PACK
Date: 2024.01.20 19:48:18 -07'00'
_____
Shawn Pack
Special Agent, HSI

Sworn and subscribed before me telephonically this __22nd__ day of January, 2024.

_____
Honorable Jacqueline M. Rateau
United States Magistrate Judge

**ATTACHMENT A**

The property to be searched is:

    a.    one (1) black colored Apple iPhone cellular phone, unknown IMEI with a clear case with silver centerpiece – hereinafter, Target Device # 1, or TD-1, in the possession of Guillermo GONZALEZ.; and currently in the custody of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI").



# **ATTACHMENT B**
# **DESCRIPTION OF ITEMS TO BE SEARCHED FOR**

1. Data and/or digital files stored on or accessed through the Target Smartphone (as described in Attachment A) relating to drug-trafficking, wherever it may be stored or found, specifically including:

    a. lists of customers, contacts, and related identifying information;

    b. types, amounts, and prices of drugs trafficked, as well as dates, places, and amounts of specific transactions;

    c. types, amounts of money obtained, received, exchanged, deposited, withdrawn, or delivered as well as dates, places, exchange rates, and amounts of specific transactions;

    d. any information related to sources of money or narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Electronic correspondence stored on or accessed through the Target Smartphone relating to drug-trafficking, to include emails and attached files, text messages, and instant messaging logs.

3. Information related to incoming calls, outgoing calls, missed calls, and duration of calls stored on or accessed through the Target Smartphone.

4. Contact lists stored on or accessed through the Target Smartphone, to include telephone and email contact names, telephone numbers, addresses, and email addresses.

5. Evidence of persons who used, owned, or controlled the Target Smartphone.

6. Logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, instant messaging logs, photographs, electronic correspondence, and telephone contact lists stored on or accessed through the Target Smartphone.